OSCAR ANGULO,

Plaintiff,

VERSUS

NASSAU COUNTY, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
March 6, 2015
_____

JOSEPH F. BIANCO, District Judge:

*Pro se* plaintiff Oscar Angulo ("Angulo" or "plaintiff") brings this action against defendants Nassau County ("the County"), Michael J. Sposato ("Sposato"), and numerous mail room employees and corrections officers at the Nassau County Correctional Center ("NCCC") (collectively, "defendants"), alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his First, Fourth, Fifth, Sixth, and Fourteenth Amendment rights through the destruction of various legal documents and his legal mail, which allegedly deprived him of, *inter alia*, his rights to counsel and a trial by jury. Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the grounds that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), and on the merits. For the following reasons, the Court grants the motion in its entirety.

I. BACKGROUND

A. Factual Background

Plaintiff claims his rights were violated in two distinct ways: (1) the destruction of legal documents by officers at NCCC (*see* Second Amended Complaint ("SAC") ¶¶ 16–57); and (2) the destruction of incoming legal mail (*see id.* ¶¶ 59–73).

The Court takes the following facts from defendants' Rule 56.1 Statement of Facts, and the parties' affidavits, depositions, exhibits. Where the Rule 56.1 Statement contains specific citations to the record as support, the Court cites to the Rule 56.1 Statement, rather than the underlying citation to the record. Unless otherwise noted, where the Rule 56.1 statement is cited, that fact is undisputed or plaintiff has not pointed to any contradictory evidence in the record.[1] The Court construes the facts in

---

[1] Plaintiff did not submit a Rule 56.1 Statement of Facts, in violation of Local Civil Rule 56.1. He

the light most favorable to plaintiff, the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005).

1. Destruction of Mail

Plaintiff was an inmate at NCCC from January 29 to November 9, 2009, when he was transferred to Downstate Correctional Facility ("DCF"). (Def. 56.1 ¶¶ 1, 41–42.) Before his incarceration, plaintiff hired the firm Cassisi & Cassisi to represent him in an action against the Long Island Railroad ("LIRR"). (*Id.* ¶ 43; *see* Opp'n, at Background ¶¶ III–IV.) During his incarceration at NCCC, plaintiff never received any legal correspondence from his counsel in the matter against the LIRR. (SAC ¶ 15.) He also never attempted to contact the firm until he was transferred to DCF. (Def. 56.1 ¶¶ 53–54.)

While at DCF, plaintiff contacted the firm to inquire about the case against the LIRR. (Def. 56.1 ¶ 54.) Frank Cassisi responded in a letter in December 2009 that he had withdrawn as plaintiff's attorney. (*Id.* ¶ 55.) Mr. Cassisi also forwarded three unopened pieces of mail that were returned to his office from DCF, as well as copies of previous letters that were sent to plaintiff's home and to NCCC. (December 9, 2009 Letter, Opp'n Ex. A.) The March 5, 2009 letter from an attorney at the firm informed plaintiff that the firm was "unable to undertake representation of [the] case"; informed plaintiff that the firm had filed a Notice of Claim on his behalf; and advised him that a Summons and Complaint must be filed within one year and ninety days from the date of the accident, which occurred on September 17, 2008. (March 5, 2009 Letter, Opp'n Ex. A.) Plaintiff claims that defendants "willfully and maliciously" confiscated and destroyed the letters, thus causing the LIRR case to be dismissed. (Opp'n, at Background ¶¶ XI, XIII.)

2. Destruction of Legal Documents Left in Law Library

In his Second Amended Complaint, plaintiff alleges that, on or about August 12, 2009, he inadvertently left his legal documents, relating to his criminal case, in NCCC's law library. (SAC ¶¶ 23–30.) Plaintiff further alleges that he subsequently saw Officer Carmine Pulgrano holding the legal documents in the Control Room, and that Pulgrano proceeded to intentionally rip and shred the documents, while other correction staff employees watched.[2] (*Id*. at ¶¶ 33–38.)

---

mostly relies upon his complaint, and the only documentary evidence he has submitted are (1) track and confirm receipts and (2) emails. It appears that, although defendants included the "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment" with their motion, plaintiff has failed to submit any other evidence. Generally, a party's "'failure to respond or contest the facts set forth by the [moving party] in [its] Rule 56.1 statement as being undisputed constitutes an admission of those facts, and those facts are accepted as being undisputed.'" *Jessamy v. City of New Rochelle*, 292 F. Supp. 2d 498, 504 (S.D.N.Y. 2003) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd*., 262 F. Supp. 2d 134, 139 (S.D.N.Y. 2003)). However, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Gilani v. GNOC Corp*., No. 04-CV-2935 (ILG), 2006 WL 1120602, at *2 (E.D.N.Y. Apr. 25, 2006) (exercising court's discretion to overlook the parties' failure to submit statements pursuant to Local Civil Rule 56.1). Accordingly, in the exercise of its broad discretion and given plaintiff's *pro se* status, the Court will overlook this defect and will deem admitted only those facts in defendants' Rule 56.1 Statement that are supported by admissible evidence and not controverted by other admissible evidence in the record. *See Jessamy*, 292 F. Supp. 2d at 504.

---

[2] Plaintiff does not allege that this incident on August 12, 2009 is, in any way, related to the alleged

2

### 3. Grievance Procedure

The Inmate Handbook explains the rules, regulations, and procedures with which all inmates must comply, and it details NCCC's Grievance Procedure. (Def. 56.1 ¶¶ 57–58; *see* Inmate Handbook, Def. Ex. G.) Plaintiff does not claim that he never received any information about the grievance procedure at NCCC. As relevant here, according to the three-part grievance process, an inmate must file a "grievance within five (5) days of the date of the act or occurrence giving rise to the grievance." (Inmate Handbook, at 4.) The inmate must submit a grievance form, available in the Inmate Law Library or the housing officer's station, for review by a grievance coordinator. (*Id.*) The grievance form must be placed into a grievance mailbox located in each housing area; grievance unit staff will then remove the form from the mailbox and issue a grievance receipt for each grievance. (*Id.*) Within two business days after receiving the grievance coordinator's written determination, the grievant may appeal to the chief administrative officer or his designee. (*Id.*) Within three business days of receiving the chief administrative officer's determination, the grievant may appeal any grievance denied by the facility administrator to the State Commission of Correction by indicating his desire to appeal. (*Id.* at 5.) The matter is then referred to the Commission's Citizens' Policy and Complaint Review Council ("CPCRC"). (*Id.*)

In this case, plaintiff did not file a grievance regarding the alleged destruction of legal documents by officers at NCCC in accordance with the Inmate Handbook. Instead, he wrote out a complaint on a piece of paper and sent it to defendant Sheriff Sposato. (Def. 56.1 ¶¶ 65–66; *see* Letter to Sposato, SAC Ex. A.) According to plaintiff, he did so because a supervisor, defendant Carthcat, said there were no grievance forms available in the unit. (Angulo Dep. at 36; *see also* SAC ¶ 4.) However, plaintiff has submitted no evidence to controvert defendants' evidence that, regardless of what the officer allegedly said, there are grievance forms available in other areas of the jail, such as the Inmate Law Library, and during Inmate Council meetings. (Def. 56.1 ¶ 59.) In any event, in his letter to Sposato, plaintiff complained that, after he forgot his legal work in the law library, defendant Pulgrano ripped and shredded those documents in front of plaintiff, and none of the supervisors or other officers who were present stopped him. (Letter to Sposato, at 1–2.) Subsequent to the filing of the grievance letter, plaintiff met with two investigators from Internal Affairs, who discussed a notarized drawing that precipitated a conflict between plaintiff and Pulgrano and the alleged destruction of documents.[3] (Angulo Dep. at 36–37.) There is no evidence that plaintiff ever received a response or determination on the grievance. Plaintiff does not claim that he appealed the grievance. (Def. 56.1 ¶ 67.)

### B. Procedural Background

Plaintiff commenced this action on March 31, 2010, and filed the SAC on August 8, 2011. Defendants answered on September 6, 2011. Defendants moved for summary judgment on December 16, 2013. After plaintiff failed to reply or otherwise apprise the Court of his status, the Court

---

destruction of his mail in March 2009. Instead, according to plaintiff, the incident occurred on August 12, 2009 because, just prior to the incident on that day, Officer Pulgrano had reviewed one of the papers and believed plaintiff had forged his signature on a document. However, plaintiff asserted he merely wrote Pulgrano's name on a copy of the document, but not the original, notarized document. (Angulo Dep. at 41–42.)

[3] The evidence does not indicate whether the Internal Affairs personnel were aware of any grievance.

3

dismissed the complaint without prejudice pursuant to Federal Rule of Civil Procedure 41(b) on March 28, 2014. Plaintiff moved to reopen the case by letter dated May 17, 2014. The Court granted the motion on June 12, 2014, and directed plaintiff to respond to the pending motion for summary judgment. Plaintiff submitted his opposition on June 25, 2014. Defendants replied on July 21, 2014. The matter is fully submitted.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration and emphasis in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48 (emphasis in original). Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

When considering a dispositive motion made by or against a *pro se* litigant, the Court is mindful that a *pro se* party's pleadings must be "liberally construed" in

4

favor of that party and are held to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (internal quotation marks and citations omitted). Nonetheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal quotation marks and citation omitted).

III. DISCUSSION

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To prevail on a claim under § 1983, a plaintiff must prove that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). In addition, "a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004); *see Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987) ("Absent some personal involvement by [a defendant] in the allegedly unlawful conduct of his subordinates, he cannot be held liable under section 1983.").

With respect to the claims involving the alleged destruction of legal documents left in the law library by plaintiff, defendants argue that summary judgment is warranted because Angulo failed to exhaust his administrative remedies. With respect to the claims involving the alleged destruction of legal mail, defendants move for summary judgment on the merits.

A. <u>Failure to Exhaust</u>

1. Legal Standard

The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings" *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Therefore, the exhaustion inquiry requires a court to "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal*, 558 F.3d at 124

(citing *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford*, 548 U.S. at 88–90).

Prior to *Woodford*, the Second Circuit

> recognized some nuances in the exhaustion requirement: (1) administrative remedies that are ostensibly 'available' may be unavailable as a practical matter, for instance, if the inmate has already obtained a favorable result in administrative proceedings but has no means of enforcing that result, or if the inmate has been deterred by intimidation; (2) similarly, if prison officials inhibit the inmate's ability to seek administrative review, that behavior may equitably estop them from raising an exhaustion defense; (3) imperfect exhaustion may be justified in special circumstances, for instance if the inmate complied with his reasonable interpretation of unclear administrative regulations, or if the inmate reasonably believed he could raise a grievance in disciplinary proceedings and gave prison officials sufficient information to investigate the grievance.

*Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (internal citations omitted); *see also Davis v. New York*, 311 F. App'x 397, 399 (2d Cir. 2009) (citing *Hemphill v. New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004)). Initially, it was unclear whether the above-discussed considerations would be impacted by *Woodford*. *See, e.g.*, *Reynoso*, 238 F. App'x at 662 ("Because we agree with the district court that [plaintiff] cannot prevail on any of these grounds, we have no occasion to decide whether *Woodford* has bearing on them."); *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) ("We need not determine what effect *Woodford* has on our case law in this area, however, because [plaintiff] could not have prevailed even under our pre-*Woodford* case law."). However, even after *Woodford*, the Second Circuit has continued to hold that an inmate's failure to comply with the exhaustion requirement may be excused on these grounds. *See Messa*, 652 F.3d 305, 309 (2d Cir. 2011) (citing *Hemphill* factors).

As the Supreme Court has held, exhaustion is an affirmative defense. *See Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *see also Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009) (Report and Recommendation) ("Failure to exhaust administrative remedies under the PLRA is an affirmative defense, and thus the defendants have the burden of proving that [plaintiff's] retaliation claim has not been exhausted." (citations omitted)).

2. Analysis

Defendants argue that summary judgment is warranted on the claims regarding the alleged destruction of legal documents (left in the law library) because plaintiff did not comply with NCCC's grievance procedure. As set forth below, the Court agrees.

a. Proper Exhaustion

"Proper exhaustion" requires a prisoner to use "'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Ruggiero*, 467 F.3d at 176 (quoting *Woodford*, 548 U.S. at 90) (emphasis in original). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones*, 549 U.S. at 218, "proper

6

exhaustion" under the PLRA "'demands compliance with [that] agency's deadlines and other critical procedural rules,'" *Ruggiero*, 467 F.3d at 176 (quoting *Woodford*, 548 U.S. at 90). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Id.* (citing *Woodford*, 548 U.S. at 83–84); *see Woodford*, 548 U.S. at 95 ("For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. . . . We are confident that the PLRA did not create such a toothless scheme.").

Plaintiff asserts that, immediately after his documents allegedly were destroyed, he was told by one officer that there were no grievance forms available. Nevertheless, plaintiff has not introduced evidence that grievance forms were unavailable throughout NCCC, and he also has not produced evidence that he complied with NCCC procedure and left his grievance in the grievance mailbox and received a receipt.[4] Moreover, no reasonable factfinder could conclude that plaintiff complied with the first step in the grievance process simply by writing a letter to Sheriff Sposato. In any event, even assuming *arguendo*, the letter to Sposato constituted the first step, plaintiff failed to complete the exhaustion process, including appealing any lack of a response. Therefore, because plaintiff failed to timely file his grievance in accordance with NCCC's procedures and failed to appeal, he has failed to properly exhaust his administrative remedies. *See Medina v. Nassau Cnty. Sheriff Dep't*, No. 11-CV-228 (JFB)(GRB), 2013 WL 4832803, at *5 (E.D.N.Y. Sept. 10, 2013) (holding that plaintiff failed to exhaust remedies where grievances were deemed insufficient and plaintiff failed to supply necessary information, and plaintiff otherwise failed to appeal any grievances); *Mosley v. Johnson*, No. 1:09cv992 (LO/JFA), 2011 WL 2077804, at *4 (E.D. Va. May 23, 2011) (holding that plaintiff failed to exhaust administrative remedies when his complaints "were not submitted in compliance with applicable [ ] procedural rules"), *aff'd*, 469 F. App'x 269 (4th Cir. 2012); *see also Morrison v. Stefaniak*, 523 F. App'x 51, 52 (2d Cir. 2013) (upholding dismissal because plaintiff failed to appeal the Inmate Grievance Resolution Committee's decision); *Valentine v. Lindsay*, No. 10-CV-868 (JG)(JMA), 2011 WL 3648261, at *7 (E.D.N.Y. Aug. 17, 2011) (prisoner failed to exhaust his administrative remedies when he untimely appealed grievance).

Any failure by NCCC to respond to the grievance (even if it was received) does not excuse plaintiff's failure to exhaust all levels of administrative appeal of those grievances. *See, e.g.*, *Butler v. Viscusi*, No. 11-CV-4844 (JFB)(WDW), 2014 WL 1407262, at *8 (E.D.N.Y. Apr. 11, 2014) (granting motion for summary judgment based on prisoner's failure to exhaust because, *inter alia*, assertion that grievances were misplaced or destroyed was not basis to excuse exhaustion); *Rosado v. Fessetto*, No. 9:09-CV-67 (DNH/ATB), 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010) ("Courts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse his exhaustion requirement.") (collecting cases), *report & recommendation adopted*, 2010 WL

---

[4] As noted *supra*, plaintiff has submitted no evidence to controvert defendants' evidence that, regardless of what the officer allegedly said, there are grievance forms available in other areas of the jail, such as the Inmate Law Library, and during Inmate Council meetings. (Def. 56.1 ¶ 59.)

7

3809991 (N.D.N.Y. Sept. 21, 2010); *LaBombard v. Burroughs-Biron*, Civi Action No. 2:09-CV-136, 2010 WL 2264973, at *6 (D. Vt. Apr. 30, 2010) ("[T]he lack of a response did not excuse him from moving to the next step in the process, and eventually appealing to the Commissioner, if necessary, prior to filing suit"), *report & recommendation adopted*, 2010 WL 2265004 (D. Vt. June 2, 2010); *George v. Morrison*, No. 06 Civ. 3188 (SAS), 2007 WL 1686321, at *3 (S.D.N.Y. June 11, 2007) ("It is well-settled . . . that even when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted." (citation and internal quotation marks omitted)); *Veloz v. New York*, 339 F. Supp. 2d 505, 516 (S.D.N.Y. 2004) ("[P]laintiff's allegation that these particular grievances were misplaced or destroyed by correctional officers ultimately does not relieve him of the requirement to appeal these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming."), *aff'd*, 178 F. App'x 39 (2d Cir. 2006); *accord Martinez v. Williams*, 186 F. Supp. 2d 353, 357 (S.D.N.Y. 2002); *Waters v. Schneider*, No. 01-CV-5217 (SHS), 2002 WL 727025, at *2 (S.D.N.Y. Apr. 23, 2002).

Thus, plaintiff failed to exhaust any claims regarding the alleged destruction of documents left by him in the law library.

b.  Availability of Remedies

The Second Circuit has stated that, if a prisoner has failed to exhaust, the Court must determine "whether administrative remedies were in fact 'available' to the prisoner . . . or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop . . . the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill*, 380 F.3d at 686 (internal citations omitted). It is clear that "[a]n administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it." *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (citations omitted); *see also Smith v. Woods*, No. 09:3-CV-480, 2006 WL 1133247, at *15 (N.D.N.Y. Apr. 24, 2006) (Report and Recommendation) ("[C]ase law exists supporting the proposition that, assuming plaintiff was instructed by prison officials, contrary to prison regulations, that he could not file a grievance, and plaintiff indeed did not initiate the grievance process by filing that grievance in reliance on that misrepresentation, the formal grievance proceeding required by the prison grievance system was never 'available' to plaintiff within the meaning of the PLRA." (internal alterations, citations, emphasis, and quotation marks omitted)).

Plaintiff has not shown that NCCC's grievance procedure was not "available" to him due to misrepresentations by prison officials. *See Hemphill*, 380 F.3d at 686. There is no evidence that Angulo was told that he could not file or appeal any grievance, or that his complaint involved non-grievable matters. *See, e.g., Williams v. Suffolk Cnty.*, No. 11-CV-5198 (JFB)(AKT), 2012 WL 6727160, at *5–6 (E.D.N.Y. Dec. 28, 2012) (officials erroneously told plaintiff that matter could not be pursued through normal grievance process); *Feliciano v. Goord*, No. 97-CV-263 (DLC), 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (denying motion to dismiss because, *inter alia*, officials told plaintiff that complaint involved non-grievable security matter). Nor has plaintiff shown that prison officials purposefully lost or refused to answer any grievance in order to prevent him from

8

invoking his administrative remedies. Plaintiff also does not demonstrate that he was unaware of the appeals process, *see Ruggiero*, 467 F.3d at 178 (holding that inmate had not exhausted his administrative remedies when he did not claim "that he was unaware of the grievance procedures contained within [the Inmate Handbook] or that he did not understand those procedures"), or that he reasonably believed pursuing a grievance would be "futile or impossible" through the introduction of evidence regarding "prison officials' threats, beatings" or other misconduct, *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).

Plaintiff also has not demonstrated that special circumstances warrant excusal from the exhaustion requirement. Findings of special circumstances have been primarily established where plaintiffs acted pursuant to reasonable interpretations of the regulations, thus preventing exhaustion. *See Ruggiero*, 467 F.3d at 175 (describing "special circumstances" as "a *reasonable misunderstanding* of the grievance procedures, [thereby] justify[ing] the prisoner's failure to comply with the exhaustion requirement" (emphasis added)); *Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010) ("Among the circumstances potentially qualifying as 'special' under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute cannot be grieved."). No such special circumstances are present here.

Accordingly, the Court grants summary judgment to defendants on the claims involving the destruction of legal documents for failure to exhaust.

B. Destruction of Mail Claims

Defendants also move for summary judgment on the destruction of legal mail claims. In his opposition, plaintiff focuses on his access to the courts claim. As set forth below, plaintiff has not submitted sufficient evidence from which a rational jury could find in his favor on any of the constitutional claims that he asserts related to this alleged destruction of mail.

As a general matter, the Court concludes that plaintiff's conclusory allegations are insufficient to survive summary judgment. According to the Second Circuit, under the First Amendment, prisoners have a right to "the free flow of incoming and outgoing mail." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail." *Id.* A prisoner's right to receive and send mail, however, may be regulated. *Johnson v. Goord*, 445 F.3d 532, 534 (2d Cir. 2006) (citing *Davidson v. Mann*, 129 F.3d 700, 702 (2d Cir. 1997) (upholding the validity of a prison regulation limiting inmates' purchases of stamps for non-legal mail)). Such regulation "'is valid if it is reasonably related to legitimate penological interests.'" *Rodriguez v. James*, 823 F.2d 8, 12 (2d Cir. 1987) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Thus, "[t]he regulation of inmates' mail by state prison officials . . . is a matter of internal prison administration with which [courts] will not interfere, absent a showing of a resultant denial of access to the courts or of some other basic right retained by a prisoner." *Argentine v. McGinnis*, 311 F. Supp. 134, 137 (S.D.N.Y. 1969).

Here, as defendants demonstrate by pointing to the paucity of facts in the record, plaintiff has not submitted any evidence,

outside of his mere suppositions about defendants' intent and the fact that the mail was not delivered, to support his claims that his First, Fifth, Sixth, and Fourteenth Amendment rights were violated. In addition, during his deposition, plaintiff did not point to any evidence supporting his allegations. Plaintiff also admits that he never attempted to contact his attorney or any other individual with respect to his case against the LIRR. In short, there is no evidence from which a reasonable factfinder could conclude that any NCCC official purposefully acted to deny plaintiff access to his legal mail or the courts. Under these circumstances, as discussed in more detail below, the Court concludes that defendants have discharged their initial burden of production by "affirmatively demonstrat[ing] that there is no evidence in the record to support a judgment for the nonmoving party" and are entitled to summary judgment on this ground. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (explaining that, although a conclusory assertion that the nonmoving party has no evidence is insufficient, moving party may affirmatively show the absence of evidence in the record and discharge its burden of production by deposing nonmovant's witnesses or establishing inadequacy of documentary evidence). The Court shall briefly address the merits of the claims notwithstanding this conclusion.

1. Access to the Courts

"It is well established that all persons enjoy a constitutional right of access to the courts," which "may include affording prisoners who are preparing legal papers 'adequate law libraries or adequate assistance from persons trained in the law,' at least for those challenging their sentences or conditions of confinement." *Monsky v. Moraghan*, 127 F.3d 243, 246 (2d Cir. 1997) (quoting *Bounds v. Smith*, 430 U.S. 817, 828) (citing *Lewis v. Casey*, 518 U.S. 343, 355, 368 (1996); *Morello v. James*, 810 F.2d 344, 346 (2d Cir. 1987)). Thus, "[i]n order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused 'actual injury,' *i.e.*, took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.'" *Id.* at 247 (quoting *Lewis*, 518 U.S. at 349, 351). Plaintiff has failed to point to the actions of any specific individual that hindered his ability to pursue his lawsuit against the LIRR or otherwise interfered with his ability to access the courts, and thus cannot establish liability under § 1983. *See Patterson*, 375 F.3d at 229 (requiring showing of individual culpability). Plaintiff merely states, in a conclusory fashion, that NCCC personnel acted willfully and maliciously against him. Nothing supports that allegation or any rational conclusion that any defendant intended to or harmed plaintiff. Moreover, as defendants note, plaintiff did not attempt to contact Mr. Cassisi about his suit for over ten months, and there is no evidence that any individual otherwise hindered plaintiff's ability to write to or call his counsel. Under these circumstances, defendants are entitled to summary judgment on plaintiff's access to courts claim.[5]

---

[5] Even assuming there were more specific evidence against a defendant, any due process claim would fail because plaintiff has not adduced sufficient evidence to permit a rational jury to conclude that any individual defendant acted with a culpable state of mind—*i.e.*, more than mere negligence. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 333 (1986) ("Where a government official's act causing injury to life, liberty, or property is merely negligent, no procedure for compensation is constitutionally required." (citations omitted)); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[T]he Due Process Clause of the Fourteenth Amendment is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property."); *see also Shaul v. Cherry Valley–Springfield Cent. Sch. Dist.*, 363 F.3d 177, 187 (2d

10

## 2. Other Claims

Liberally construed, plaintiff alleges that the destruction of his mail deprived him of his Sixth Amendment right to trial by jury. The Sixth Amendment, however, pertains to criminal prosecutions, not plaintiff's civil lawsuit against the LIRR. *See* U.S. Const. amend. VI.

Liberally construed, plaintiff also alleges a conspiracy claim pursuant to 42 U.S.C. § 1985. (*See* SAC ¶¶ 54–72 (alleging that defendants "exercise deliberate indifference when he/she conspired with others and destroyed legal documents sent to plaintiff by counsel)). Section 1985 prohibits two or more persons from conspiring for the purpose of depriving any person of the equal protection of the laws or of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3). To succeed on a claim under § 1985(3), a plaintiff must establish (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Hollman v. Cnty. of Suffolk*, No. 06-CV-3589 (JFB)(ARL), 2011 WL 280927, at *11 (E.D.N.Y. Jan. 27, 2011) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993)); *see Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999) (citing *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988)). A conspiracy "can be established by showing that the parties have a tacit understanding to carry out of the prohibited conduct." *Thomas*, 165 F.3d at 146 (quoting *LeBlanc–Sternberg v. Fletcher*, 67 F.3d 412, 427 (2d Cir. 1995) (internal quotation marks omitted)). It must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks omitted). The plaintiff also must show "with at least some degree of particularity, overt acts which the defendants engaged in which were reasonable related to the promotion of the claimed conspiracy." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 133 (E.D.N.Y. 2010) (quoting *Thomas*, 165 F.3d at 146). Here, as detailed *supra*, plaintiff has not presented any facts supporting a meeting of the minds between any defendants to violate plaintiff's rights, much less that any such actions were motivated by any discriminatory animus. Accordingly, summary judgment on this claim is warranted, as well.[6]

In sum, the Court concludes that defendants have established that "there is no evidence in the record to support a judgment for the nonmoving party," entitling defendants to summary judgment on the destruction of mail-related claims. *Celotex Corp.*, 477 U.S. at 322.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion for summary judgment. The Clerk of the Court shall enter

---

Cir. 2004) ("It is well established that mere negligence is insufficient as a matter of law to state a due process violation."). Thus, because plaintiff has failed to present sufficient evidence that any defendant acted with "something more than mere negligence," his claims cannot implicate any due process constitutional concerns.

[6] To the extent plaintiff attempts to bring constitutional claims (related to the alleged destruction of mail) under any other theories, the Court concludes that such claims are without any legal or factual basis, and cannot survive summary judgment.

judgment accordingly and close the case. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

        SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:    March 6, 2015
             Central Islip, NY

\*\*\*

Plaintiff proceeds *pro se*. Defendants are represented by Pablo A. Fernandez and Liora M. Ben-Sorek of the Nassau County District Attorney's Office, One West Street, Mineola, NY 11501.